**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**ANTONIO COLE**,

                         Plaintiff,

- v -                                              Civ. No. 9:11-CV-0004
                                                                             (LEK/RFT)

**PANG LAY KOOI**, *Doctor, Auburn Correctional Facility*,
**NANCY O'CONNOR-RYERSON**, *R.N., Auburn Correctional Facility*, **H.D. GRAHAM**, *Superintendent Auburn Correctional Facility*, **LESTER WRIGHT**, *DOCS Chief Medical Officer*,

                         Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

**ANTONIO COLE**
Plaintiff, *Pro Se*
01-A-1184
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

**HON. ERIC T. SCHNEIDERMAN**               **DAVID L. COCHRAN, ESQ.**
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capital
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Antonio Cole brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth and Fourteenth Amendment rights by discontinuing his prescription pain reliever after five doses of the medication were found in his cell. *See generally* Dkt. No. 14, Am. Compl. Defendants now move for Summary Judgment. Dkt. No. 61. Plaintiff

opposes the Motion. Dkt. No. 66. For the reasons that follow we recommend that Defendants' Motion for Summary Judgment be **GRANTED**.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [FED. R. CIV. P. 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v.*

*Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Background

At all times relevant to the Amended Complaint, Plaintiff was an inmate at Auburn Correctional Facility ("ACF"). Dkt. No. 66, Antonio Cole Aff. (hereinafter "Cole Aff. 1"),[1] dated Dec. 5, 2012, at ¶ 1. In February of 2008, Plaintiff was diagnosed with "disc protrusion/herniation at the L4-5 level with moderate to severe, if not severe, central stenosis . . . [and] [d]isc bulge at the

---

[1] Plaintiff includes two documents entitled "Affidavit" in his Opposition papers. We refer here to the Affidavit at Docket Number 66, and not the Affidavit at Docket Number 66-1.

L3-4 level." Am. Compl., Ex. A, MRI Imaging Report (hereinafter "MRI Rep."), dated Feb. 12, 2008. Prior to June 17, 2010, Plaintiff received various forms of treatment at ACF for his back pain, including prescription and over-the-counter medications, physical therapy, an extra mattress, x-rays, an MRI, and steroid injections. Cole Aff. 1 at ¶¶ 3–7. By June 17, 2010, Plaintiff's treatment regiment included the prescription drugs Neurontin and Ultram. *Id.* at ¶ 8.

On June 17, 2010, guards at ACF found five white pills in an unlabeled medication bag in Plaintiff's cell, that were later identified as Ultram by a nurse. *Id.* Defendant Dr. Kooi was telephoned, and Dr. Kooi ordered Plaintiff's Ultram prescription be discontinued. *See* Dkt. No. 62-2, Portions of Plaintiff's Ambulatory Health R. (hereinafter "AHR") at p. 20.[2] The following morning, June 18, a nurse gave Plaintiff his Neurontin, and informed him that his Ultram prescription had been discontinued because of the pills that were found in his cell. Cole Aff. 1 at ¶ 9. Later that evening, Plaintiff experienced trouble sleeping, increased pain in his lower back, and pain in his right testicles and right leg. By June 28, 2010, Plaintiff was "unable to put on [his] shoes, stand up for the count, . . . [or] sit without experiencing extreme pain." *Id.* at ¶ 10.

On July 7, 2010, Plaintiff informed Defendant Nurse O'Connor-Ryerson that he "was in extreme pain and that [he] needed the ultram[] reinstated, if not, [he] would be in bad shape." Defendant O'Connor-Ryerson later sent Plaintiff Tylenol for his pain. *Id.* at ¶¶ 12–13. Thereafter, Plaintiff regularly complained to ACF medical staff that he was experiencing severe pain and/or that he needed his Ultram prescription to be reinstated. *See, e.g.,* AHR at pp. 10–19. Between June 17, 2010, when Plaintiff's Ultram prescription was discontinued, and April 12, 2011, the date Plaintiff

---

[2] The AHR is not paginated, therefore, we reference the page numbers automatically assigned by the Court's Case Management/Electronic Case Filing System.

filed his Amended Complaint, his treatment at ACF included an extra mattress, Neurontin, Tylenol, and a TENS unit. *See generally id.* at pp. 10–20.

On June 28, Plaintiff filed a grievance claiming that the discontinuation of his Ultram constituted deliberate indifference to his serious medical needs. Cole Aff. 1 at ¶ 11; Am. Compl., Ex. C, Inmate Grievance, dated June, 28, 2010. That grievance was denied and Plaintiff appealed the decision. Eventually, Plaintiff's grievance was reviewed and ultimately denied by Defendant Graham, ACF's Superintendent. Cole Aff. 1 at ¶¶ 14 & 16. In addition, Plaintiff wrote a letter directly to Defendant Wright the Chief Medical Officer at the Department of Corrections and Community Supervision ("DOCCS"). However, Defendant Wright did not respond personally to Plaintiff's letter. Cole Aff. 1 at ¶¶ 14 & 17; Am. Compl., Ex. D.

## B. Plaintiff's Claims

Plaintiff claims that (1) Defendant Dr. Kooi was deliberately indifferent towards his serious medical needs because Dr. Kooi chose to discontinue his Ultram prescription, resulting in a course of treatment that did not adequately control Plaintiff's pain, (2) Defendant Nurse O'Connor-Ryerson subjected him to an unreasonable risk of future harm by refusing to reinstate his Ultram prescription, and (3) Defendants Dr. Wright and Superintendent Graham were liable in their supervisory capacities for failing to remedy the alleged violations after he brought them to their attention. Am. Compl. at First–Fourth Causes of Action.

### *1. Eighth Amendment*

Plaintiff's claims against Defendants Dr. Kooi and Nurse O'Connor-Ryerson fall under the

Eighth Amendment.[3] To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03

---

[3] To the extent Plaintiff attempts to bring his medical indifference claims under the due process clause of the Fourteenth Amendment, *see e.g.,* Am. Compl., First Cause of Action at ¶ 8, we note that "[a] convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of 'cruel and unusual punishment.'" *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir. 2009) (citing *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996)).

(1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).

Plaintiff has presented us with a lengthy and documented history of the severe and chronic pain he has suffered as a result of his spinal condition. *See* MRI Rep.; *see generally* AHR; *see also* Dkt. No. 62-1, Antonio Cole Dep., dated Apr. 13, 2012, at pp. 4–5, 12–14, & 18–19. For purposes of the objective element of our analysis, Plaintiff's spinal problems clearly constitute a serious underlying medical condition. *See Rodriguez v. Smith*, 2011 WL 4479689, at \*5 (N.D.N.Y. Aug. 19, 2011) (collecting cases for the proposition that severe long-lasting back pain constitutes a serious medical need); *see also Brock v. Wright*, 315 F.3d 158,163 (2d Cir. 2003) (overturning district court's ruling that pain caused by a keloid scar on the plaintiff's cheek was not a sufficiently serious medical need because "the district court either erred in not treating [plaintiff's claims of chronic pain] as true or [in] believ[ing] that only extreme pain or a degenerative condition would suffice to meet the legal standard"). Nonetheless, Plaintiff's claims against Dr. Kooi and Nurse O'Conner-Ryerson still fail because his preference for a treatment other than the one provided by Defendants does not rise to the level of an Eighth Amendment violation.

An inmate who disagrees with his physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." *Chance v. Armstrong,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the

Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester Cnty. Dep't of Corrs.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Here, Dr. Kooi discontinued Plaintiff's prescription for Ultram after learning that five doses of Ultram had been found in Plaintiff's cell. *See* AHR at p. 20. Dr. Kooi's decision to suspend a prescription pain reliever in the face of evidence that Plaintiff was hoarding doses of the drug, while concomitantly providing other forms of treatment instead was not only patently reasonable, but medically prudent. Plaintiff's attempts to undermine the reasonableness of this decision by characterizing it as a non-medical decision made solely "for disciplinary purposes," are unavailing. *See e.g.*, Am. Compl. at First Cause of Action, ¶ 4. Plaintiff next claims that Nurse O'Connor-Ryerson deliberately subjected him to the risk of future harm by refusing to provide him with Ultram on July 7, 2010, even though he had explained to her that he was in "extreme pain." *See* Am. Compl. at Third Cause of Action; *see also* Cole Aff. 1 at ¶¶ 12 & 13. Like Dr. Kooi, Nurse O'Connor-Ryerson refused to reinstate Plaintiff's Ultram prescription on July 7, 2010, because he had been caught hoarding doses of the medication in his cell. *See* AHR at p. 18. And, although she did not provide Ultram, she did prescribe Tylenol. *Id.* Thus, even though Plaintiff was not given Ultram, the treatments provided by Defendants Kooi and O'Connor-Ryerson – Neurontin, Tylenol, a TENS unit, and an extra mattress – can hardly constitute deliberate indifference to Plaintiff's serious medical needs. *See Rush v. Fischer*, 2011 WL 6747392, at *3 (S.D.N.Y. Dec. 23, 2011) ("[t]he decision to prescribe one form of pain medication in place of another does not constitute

deliberate indifference to a prisoner's serious medical needs.") (citing, *inter alia*, *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011), & *Reyes v. Gardener,* 93 F. App'x 283, 285 (2d Cir. 2004) (summary order); *see also Price v. Reilly*, 697 F. Supp. 2d 344, 360-61 (E.D.N.Y. 2010) (citing cases for the proposition that "mere disagreement with a prescribed medication dosage is insufficient as a matter of law to establish the subjective prong of deliberate indifference."). Thus, no reasonable juror could conclude that either Dr. Kooi or Nurse O'Connor-Ryerson was deliberately indifferent to Plaintiff's medical needs.

Therefore, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims against Defendants Dr. Kooi and Nurse O'Connor-Ryerson.

### 2. *Supervisory Liability*

"To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995)). Here, there is no evidence of any constitutional violation, and therefore, there is no basis to hold Defendants Superintendent Graham or Dr. Wright liable in their supervisory capacities. *See Dorsey v. Fisher*, 2010 WL 2008966, at *13 (N.D.N.Y. May 19, 2010) (citing cases).

Therefore, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** as to Defendants Graham and Wright.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 61) be **GRANTED** and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: July 19, 2013

Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge